UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY BETH LANGENKAMP, | ) | CASE NO. 3:17CV2411 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Mary Beth Langenkamp ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  ECF Dkt. #1. In her brief on the merits, filed on March 16, 2018, Plaintiff asserts that the administrative law judge ("ALJ"): (1) failed to include restroom use in the appraisal of Plaintiff's physical abilities and limitations; (2) inadequately weighed the opinions of the state agency consultants; (3) improperly rejected the opinion of Plaintiff's treatment providers; and (4) issued a decision that is not support by substantial evidence.  ECF Dkt. #12.  Defendant filed a response brief on April 16, 2018.  ECF Dkt. #13.  Plaintiff filed a reply brief on April 26, 2018.  ECF Dkt. #14.

For the following reasons, the undersigned RECOMMENDS that the Court  AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on February 7, 2014.  ECF Dkt. #10 ("Tr.") at 100-101.[2]  The applications were denied initially and upon reconsideration.  *Id.* at 134, 138, 144, 151.  Plaintiff then requested a hearing before an ALJ, which was held on June 30, 2016.  *Id.* at 45.  After the hearing, the ALJ issued an unfavorable decision on August 22, 2016.  *Id.* at 19.  Subsequently, the Appeals Council denied Plaintiff's request for review.  *Id.* at 1.  Accordingly, the August 22, 2016, decision issued by the ALJ stands as the final decision.

The instant suit was filed by Plaintiff on November 17, 2017.  ECF Dkt. #1.  Plaintiff filed a brief on the merits on March 16, 2018.  ECF Dkt. #12.  Defendant filed a response brief on April 16, 2018.  ECF Dkt. #13.  On April 26, 2018, Plaintiff filed a reply brief.  ECF Dkt. #14.

## II.    RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A.    Medical Evidence

#### 1.    Physical

From August 2013 through October 2013, Plaintiff's gastroenterologist noted that her Crohn's disease was becoming increasingly unresponsive to management through medication.  Tr. at 935-44.  Plaintiff was then hospitalized from November 13, 2013, through November 24, 2013, secondary to her Crohn's disease.  *Id.* at 351-414.  During the hospital stay, a total colectomy was performed and it was noted at a follow-up appointment that the incisions were healing well.  *Id.* at 384-88, 454.  Subsequently, imaging of Plaintiff' pelvis showed fluid collection around her colon that was indicative of colitis.  *Id.* at 442.  That same month, Plaintiff reported "abdominal pain, bloating, and painful stools" while meeting with her family physician.  *Id.* at 663.

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system.  When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages.  Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

In January 2014, Plaintiff complained to her gastroenterologist of rectal bleeding and ongoing abdominal pain.  Tr. at 649-51.  On January 31, 2014, Plaintiff underwent a colonoscopy and the results showed internal hemorrhoids and a posterior anal fissure, but were otherwise normal.  *Id.* at 653.  The following month, Plaintiff complained of chronic abdominal pain while meeting with her primary care provider and an anal fissure was documented.  *Id.* at 654-55.  Plaintiff denied any anal fissure symptoms in March 2014 and it was observed that she was feeling much better.  *Id.* at 769.  In June 2014, Plaintiff complained to her gastroenterologist that she was feeling better but was still bleeding and experiencing fifteen bowel movements per day that were associated with cramping in her abdomen.  *Id.* at 773.  Another colonoscopy revealed ulceration, granularity, erythema, and nodularity in Plaintiff's rectum and terminal ileum that was compatible with Crohn's disease.  *Id.* at 780-81.  Plaintiff then began infusion therapy.  *Id.* at 823-75, 1387-1428.

In September 2014, Plaintiff reported diarrhea, rectal bleeding, clots, dizziness, and weakness.  *Id.* at 1144.  Plaintiff reported recurrent Crohn's symptoms despite medication in October 2014.  *Id.* at 923.  In November 2014, it was noted that Plaintiff "complained of diarrhea (has it all the time anyway but is having more diarrhea lately)."  *Id.* at 1152.  Plaintiff reported abdominal pain and fatigue in January 2015.  Tr. at 920-22.  In April 2015 it was noted that Plaintiff was "doing reasonably well in terms of her Crohn's disease" and that she had gained weight, but also that she "still has 15-20 bowel movements per day."  *Id.* at 1227.

### 2.    Mental

Throughout the relevant period, Plaintiff was treated at a behavioral health center where it was often noted that she was depressed, frustrated, sad, tearful, and anxious, and felt overwhelmed and hopeless.  Tr. at 298-346, 666-719, 1026-47, 1201-1204.  During this same period, Plaintiff also frequently reported that she was doing well, her medications were helping her conditions, and that she was not experiencing any major mood-related symptoms.  *Id.*  In April 2012, Plaintiff was admitted to a medical center for several days after she indicated that she was having suicidal thoughts and had cut herself multiple times on her left wrist/arm with a blade.  *Id.* at 284-95.  Plaintiff was diagnosed with bipolar disorder at that time.  *Id.*  In

-3-

December 2013, Plaintiff underwent a diagnostic update following her surgery. *Id.* at 666. During the diagnostic, Plaintiff reported that she was anxious and depressed, and she was diagnosed with bipolar disorder and assigned a global assessment of functioning ("GAF") score of forty-eight. *Id.* at 666-67. In April 2014, Plaintiff reported that she felt more depressed when her Crohn's symptoms worsened. *Id.* at 720. Another diagnostic update performed in September 2014 indicated that Plaintiff continued to struggle with mood changes and that her health issues affect her anxiety and depression. *Id.* at 1026. Plaintiff was again diagnosed with bipolar disorder and assigned a GAF score of fifty-five. *Id.*

## B. Testimonial Evidence

On June 30, 2016, the ALJ conducted a hearing with Plaintiff, her attorney, and a vocational expert ("VE") present. Tr. at 45, 47. The ALJ examined Plaintiff, who testified that she was able to drive "shorter distances" than the two-hour trip to Columbus for the hearing and that she mostly drove to her doctor's appointments. *Id.* at 50. Plaintiff stated that she graduated from high school. *Id.* When asked when she last worked, Plaintiff indicated that she had not worked since just prior to her surgery in November 2013 and that she had worked at a gas station as cashier for approximately six years. *Id.* at 51. Plaintiff then stated that she worked at a yogurt company from 2002 to 2007 where she loaded trucks and worked on an assembly line. *Id.* at 51-52.

The ALJ asked Plaintiff why she was unable to work and Plaintiff stated that she had fifteen to twenty bowel movements per day and each movement lasted for ten to fifteen minutes. Tr. at 57. Plaintiff also indicated that she had trouble showering. *Id.* Continuing, Plaintiff testified that she was diagnosed with Crohn's disease in 1999 and that she had to stop working in 2013 due to complications from the disease. *Id.* at 58. The ALJ asked Plaintiff about her daily activities, and Plaintiff stated that she cooked, cleaned, and cared for her yard when her kids were not able to do these chores. *Id.* at 59. Plaintiff then stated that she experienced severe weight loss and weight gain due to Crohn's disease. *Id.* at 60. Next, Plaintiff indicated that she also experienced pain in her knees, back, and hands, and sometimes had trouble grasping objects. *Id.* at 62-63. Plaintiff then testified that she experienced abdominal pain due to Crohn's disease

-4-

on most days and that the pain exacerbated her depression.  Tr. at 64.  Continuing, Plaintiff stated that she could not lift more than five to ten pounds due to back spasms and that she could stand for only ten minutes.  *Id.*

Plaintiff was then examined by her attorney.  Tr. at 65.  When asked about how she prepared when she had to leave the house, Plaintiff testified that she would not eat anything before leaving the house so she would not need to take bathroom breaks.  *Id.*  Plaintiff stated that she had crying spells "all the time" and that the spells happened numerous times per day.  *Id.* at 66.  Continuing, Plaintiff stated that there were days when she had trouble getting out of bed due to her depression and Crohn's disease.  *Id.* at 67.  Plaintiff indicated that she had anxiety attacks three to four times per week, but sometimes a couple of times on the same day, and that the attacks typically lasted fifteen minutes to an hour.  *Id.* at 68.  The ALJ then asked Plaintiff when she last visited a psychiatric ward.  Tr. at 70.  Plaintiff stated that the last visit was in early 2012. *Id.*

Following the examination of Plaintiff, the ALJ examined the VE.  Tr. at 70.  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past relevant work that was limited to: working at the light exertional level; lifting twenty pounds occasionally and ten pounds frequently, and carrying and pushing/pulling the same; sitting six hours in an eight-hour workday; standing and walking up to six hours in an eight-hour workday; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally stooping; occasionally kneeling and crawling; performing simple, routine tasks; occasionally interacting with supervisors, coworkers, and the general public, and a static work environment. *Id.* at 71-72.  The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform work as a cleaner (housekeeping), price marker, and stock checker.  *Id.* at 72.  Next, the ALJ added the additional limitation that the hypothetical individual would be absent more than three times per month.  Tr. at 73.  The VE stated that no work would be available for such an individual.  *Id.*  Additionally, the VE testified that no work would be available for the individual posed in the first hypothetical if the individual would be off task more than ten percent of the day.  *Id.* at 73-74.

The VE was then questioned by Plaintiff's attorney, who asked if bathroom breaks would constitute being off task, and the VE answered in the affirmative. Tr. at 74. Following the questions posed by Plaintiff's attorney, the ALJ concluded the hearing. *Id.* at 74-75.

### III.    RELEVANT PORTIONS OF THE ALJ'S DECISION

After the hearing, the ALJ issued a decision on August 22, 2016. Tr. at 19. In the decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. *Id.* at 24. Continuing, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since November 11, 2013, the alleged onset date. *Id.* The ALJ then determined that Plaintiff had the following severe impairments: inflammatory bowel disease (Crohn's disease); obesity; and an affective disorder. *Id.* Next, the ALJ stated that Plaintiff did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 416.1567(b) and 416.967(b) with the following additional limitations: occasionally crawl, kneel, stoop, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; simple, routine tasks in a static work environment; and occasional interaction with coworkers, supervisors, and the public. Tr. at 27-28. The ALJ indicated that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged onset date, had a high school education, and was able to communicate in English. *Id.* at 33. Continuing, the ALJ stated that the transferability of job skills was not material to the determination because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 34. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 11, 2013, through the date of the decision. *Id.*

-6-

## IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

social security benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward

with the evidence in the first four steps and the Commissioner has the burden in the fifth step.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and

makes a determination of disability.  This Court's review of such a determination is limited in

scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).

Therefore, this Court's scope of review is limited to determining whether substantial evidence

supports the findings of the Commissioner and whether the Commissioner applied the correct

legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's

findings if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.     LAW AND ANALYSIS

### A.     RFC Finding

Plaintiff first asserts that the ALJ failed to reasonably account for her excessive and uncontrolled bowel movements in the RFC finding.  ECF Dkt. #12 at 8.  Specifically, Plaintiff claims that the ALJ's failure to include her excessive restroom use in the RFC finding and the hypothetical questions did not accurately portray the symptoms and limitations she experienced due to Crohn's disease, and therefore resulted in a denial of benefits without substantial support. *Id.*  Plaintiff continues, stating that review of the ALJ's decision reveals that the closest the ALJ came to an explanation for the omission is that Plaintiff responded well to her colectomy procedure and subsequent course of infusions and medications.  *Id.*  (citing Tr. at 29).  According to Plaintiff, this explanation does not justify the omission of restroom use from the ALJ's findings as the record shows that Plaintiff continued to have in excess of fifteen bowel movements per day as a consequence of her Crohn's disease and colectomy procedure despite treatment.  *Id.* (citing Tr. at 773, 1227).  Plaintiff also notes that the absence of restroom use is inconsistent with Plaintiff's appearance before the ALJ as she had to stop the fifty-six minute hearing to use the restroom.  *Id.* at 8-9.

Defendant contends that the medical evidence cited by the ALJ showed that Plaintiff's Crohn's disease had responded well to treatment and was in remission.  ECF Dkt. #13 at 17 (citing Tr. at 29).  Continuing, Defendant states that by December 2013, Plaintiff was doing well after her surgery, her symptoms had resolved, she was tolerating a regular diet, had normal function, and no longer required pain medications.  *Id.* (citing Tr. at 29, 454).  Defendant notes that Plaintiff's doctor released her to return to normal activity.  *Id.* (citing Tr. at 20, 454).  According to Defendant, Plaintiff experienced some rectal bleeding the month after she was released to return to normal activity, but only after she had stopped taking her medication.  *Id.* (citing Tr. at 29, 649).  Defendant also states that a colonoscopy resulted in relatively normal findings with only a small internal hemorrhoid and posterior anal fissure, which resolved with conservative treatment.  *Id.* (citing Tr. at 29, 653).

Next, Defendant states that Plaintiff was doing better in March 2014 and June 2014 after resuming her medication.  ECF Dkt. #13 at 18 (citing Tr. at 29, 769, 773, 775).  Defendant notes that although Plaintiff's colonoscopy found signs of active Crohn's disease, she switched to bi-monthly intravenous infusions and medication that controlled her symptoms.  *Id.* (citing Tr. at 29, 927, 990, 1011).  Continuing, Defendant states that Plaintiff was doing well on her medication regimen in May 2016.  *Id.* (citing Tr. at 1216-17).  Additionally, Defendant states that a colonoscopy performed in May 2016 showed that Plaintiff' Crohn's was in remission.  *Id.* (citing Tr. at 1234, 1239).  Defendant asserts that Plaintiff disagrees with ALJ's conclusion that she is not disabled, but has not established any error in the ALJ's analysis that warrants remand. *Id.*

The ALJ's RFC finding is supported by substantial evidence.  After reviewing the evidence presented in this case, the ALJ thoroughly discussed Plaintiff's history of Crohn's disease.  Tr. at 29.  The ALJ stated that: progress notes showed that Plaintiff was doing well after her surgery; Plaintiff was tolerating a normal diet; it was noted that Plaintiff could "return to normal work activity"; despite Plaintiff's reports of pain and bleeding, medical examinations were relatively normal; a colonoscopy was relatively unremarkable; Plaintiff's Crohn's disease was managed with medication; Plaintiff responded well to intravenous treatment; a colonoscopy

in May 2016 showed that Plaintiff's Crohn's disease was in remission; and Plaintiff continued to gain weight. *Id.*

While Plaintiff asserts that the ALJ's RFC finding does not consider her excessive and uncontrolled bowel movements, Plaintiff fails to show that the ALJ's decision is not supported by substantial evidence. In support of her claim that she is unable to work due to excessive and uncontrolled bowel movements, Plaintiff cites to two instances in the record, one in June 2014 and the other in April 2015, in which she reported having approximately fifteen bowel movements per day. ECF Dkt. #12 at 8-9 (citing Tr. at 773, 1227). Although Plaintiff is correct in highlighting that she reported excessive bowel movements on two occasions in the record, the ALJ cited numerous pieces of evidence in support of the RFC finding, as stated above. *See* Tr. at 29. Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 at 234. Here, the ALJ has cited more than a scintilla of evidence supporting the RFC finding. In contrast, Plaintiff cites to two reports of excessive bowel movements in a record spanning several years when claiming that the ALJ failed to account for her excessive bowel movements. This is insufficient to establish that the ALJ's RFC finding is not supported by substantial evidence and Plaintiff's argument fails.

## B. Reviewing Consultants

Next, Plaintiff asserts that the ALJ's improperly weighed the opinions offered by the state agency reviewing consultants. ECF Dkt. #12 at 9. Plaintiff states that Diane Manos, M.D., a state reviewing physician, opined that she required access to a bathroom as needed due to frequent bowel movements. *Id.* (citing Tr. at 111). Continuing, Plaintiff avers that the ALJ neglected Dr. Manos' opinion and failed to explain why this limitation was not included in the RFC finding. *Id.* Plaintiff also claims that the ALJ failed to adequately consider the opinions of the state agency mental health consultants. *Id.* at 10. Specifically, Plaintiff claims that the ALJ provided no substantial explanation for omitting the restrictions and requirements as opined by these consultants. *Id*. at 11.

Defendant contends that the ALJ properly reconciled the state agency reviewing physicians' opinions on Plaintiff's physical and mental limitations. ECF Dkt. #13 at 15.

-10-

Regarding Dr. Manos' opinion that Plaintiff would require bathroom access, Defendant notes that the ALJ determined that Plaintiff's Crohn's symptoms were controlled with medication.  *Id.* As for the mental limitations opined by the state agency consultants, Defendant states that the ALJ incorporated the opinions into the RFC finding.  *Id.* at 15-16.

The ALJ properly addressed the opinions of the state agency reviewing consultants. Specifically, the ALJ indicated that the opinions on Plaintiff's physical limitations offered by the state agency reviewing consultants was supported by the medical evidence and that the postural limitations included in the RFC finding considered Plaintiff's "Crohn's disease and obesity, as a possible result of medications."  Tr. at 32.  Further, the ALJ stated that the mental limitations opined by the state agency consultants were consistent with the medical evidence, but were not set out in clear vocationally relevant limits.  *Id.*  Accordingly, the ALJ assigned these opinions partial weight.  *Id.*

A review of the opinions of the state agency consultants confirms that ALJ's finding that these opinions were consistent with the medical evidence.  Moreover, while Plaintiff claims that the ALJ did not adopt all limitations as opined by the consultants, she fails to show that the ALJ was required to adopt all of the limitations contained in the opinions.  The state agency reviewing physicians were not examining or treating physicians and therefore are not subject to the treating physician rule.  In the decision, the ALJ explained the weight assigned to the reviewing consultants and noted that the opinions were consistent with the medical evidence. Plaintiff fails to show that the ALJ's treatment of the reviewing consultants warrants remand.

**C.**      **Treating Physician Rule**

Plaintiff also claims that the ALJ erred in rejecting the opinion submitted by her treating psychiatrist and counselor.  ECF Dkt. #12 at 11.  An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so.  Social Security Rule 96-2p.  The ALJ must provide reasons that are

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.*  If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010).  The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ).  However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion.  *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Specifically, Plaintiff asserts that ALJ assigned no meaningful weight to the opinion of Eddy Bruno, M.D., her treating psychiatrist, and Jill Miller, her counselor.  ECF Dkt. #12 at 12. Plaintiff takes issue with the ALJ's statement that Dr. Bruno "countersigned" the opinion of Ms. Miller and states that "[c]ontrary to the ALJ's position, Plaintiff's mood and/or affect were often recorded to be abnormal during mental health status checks at Dr. Bruno's office."  *Id.* at 12-13. Additionally, Plaintiff avers that the ALJ considered the assignment of a GAF score of sixty-five by Ms. Miller to show that Plaintiff was not as limited as alleged, but later stated that GAF scores were not reasonable metrics for appraising a claimant's disability status.[3]  *Id.* at 13. Defendant contends that the ALJ properly pointed out that Ms. Miller was not an acceptable medical source, but, nonetheless, the ALJ's analysis of the opinion provided "good reasons" even when applying the treating source analysis to the opinion.  ECF Dkt. #13 at 13. Continuing, Defendant states that the ALJ highlighted the inconsistencies between the treatment notes from Dr. Bruno and Ms. Miller and the highly restrictive limitations as opined in the questionnaire signed by both Dr. Bruno and Ms. Miller.  *Id.*

The Court need not address the ALJ's statement that Dr. Bruno "countersigned" the opinion because the ALJ provided "good reasons" for discounting the opinion.  *See* Tr. at 31-32. The ALJ stated that the last note in the record from Dr. Bruno indicated that Plaintiff was doing well on her medications with no major side effects.  *Id.* at 31.  Likewise, the ALJ noted that the last treatment record from Ms. Miller indicated that Plaintiff was alert and oriented, although tearful at times, and that she was concerned about her health and the behavior of her children, but that she was getting along well with her ex-husband and his girlfriend.  *Id.*  The ALJ also states that Ms. Miller assessed Plaintiff to have a GAF score of sixty-five, "which was previously representative of some mild symptoms or some difficulty in social, occupational, or

---

[3]Although Plaintiff's statement of errors enumerates the claim that the ALJ's is not supported by substantial evidence, Plaintiff's brief does not include a section regarding this contention and instead appears to allege that the ALJ's decision is not supported by substantial evidence as a general contention.  *See* ECF Dkt. #12.

school functioning." *Id.* at 31-32.  Accordingly, the ALJ assigned the opinion little weight. *Id.* at 32.

The ALJ provided "good reasons" for assigning little weight to the opinion submitted by Dr. Bruno and Ms. Miller.  In support of the decision, the ALJ indicated that the opinion was inconsistent with the most recent treatment notes submitted by Dr. Bruno and Ms. Miller, and that other care providers in the record generally noted that Plaintiff had a normal mood and affect and that she was in no acute distress.  Tr. at 31.  The last note from Dr. Bruno, dated five months before the opinion, stated that Plaintiff was "doing well" and contained an unremarkable mental status evaluation.  *Id.* at 1029.  Likewise, the last record from Ms. Miller showed that Plaintiff, though tearful at times, was alert/oriented and making some progress towards her goals. *Id.* at 1046.  The ALJ noted that these treatment records were inconsistent with the extreme limitations contained in the opinion.  *Id.* at 31 (citing Tr. at 1201-1204).  Additionally, while Plaintiff claims that the ALJ was inconsistent when discussing the GAF score assigned by Ms. Miller, the ALJ did not state that the GAF score was considered to be indicative of Plaintiff's symptoms.  Rather, the ALJ indicated the GAF score was assigned by Ms. Miller and was thus informative as to Ms. Miller's assessment of Plaintiff's limitations.  *Id.* at 31-32.  The ALJ later explained that GAF scores were a subjective measure and were not entitled to great weight when making a disability determination.  *Id.* at 32.  For these reasons, the ALJ provided "good reasons" to assign little weight to the opinion of Dr. Bruno and Ms. Miller.

**VII.   CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: January 28, 2019                      */s/George J. Limbert*
                                            GEORGE J. LIMBERT

                                            UNITED STATES MAGISTRATE JUDGE
ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).